**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 13-2234**

─────────

DAN RYAN BUILDERS, INC., a Maryland Corporation,

              Plaintiff - Appellant,

       v.

CRYSTAL RIDGE DEVELOPMENT, INC., a West Virginia
Corporation; LANG BROTHERS, INC., a West Virginia
Corporation; ROBERT S. LANG, an individual,

              Defendants - Appellees,

       v.

HORNOR BROTHERS ENGINEERS,

              Third Party Defendant - Appellee,

       and

BRYCO BORE & PIPE, INC.; LOUDOUN VALLEY CONCRETE, INC.;
DINGESS TRANSPORT, INC.; NORTH STAR FOUNDATION, INC.;
PENNSYLVANIA SOIL AND ROCK INCORPORATED,

              Third Party Defendants.

─────────

Appeal from the United States District Court for the Northern
District of West Virginia, at Clarksburg.  Irene M. Keeley,
District Judge. (1:09-cv-00161-IMK-JSK)

─────────

Argued: December 10, 2014          Decided: April 20, 2015

─────────

Before MOTZ, GREGORY, and WYNN, Circuit Judges.

─────────

Affirmed by published opinion. Judge Motz wrote the majority opinion, in which Judge Wynn joined. Judge Gregory wrote a separate opinion concurring in part and dissenting in part.

———————————

**ARGUED:** Avrum Levicoff, LEVICOFF, SILKO & DEEMER, P.C., Pittsburgh, Pennsylvania, for Appellant. Tiffany R. Durst, PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC, Morgantown, West Virginia, for Appellees. **ON BRIEF:** Julie A. Brennan, LEVICOFF, SILKO & DEEMER, P.C., Pittsburgh, Pennsylvania, for Appellant. Nathaniel D. Griffith, PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC, Morgantown, West Virginia, for Appellees Crystal Ridge Development, Inc., Lang Brothers, Inc., and Robert S. Lang. Frank E. Simmerman, Jr., Chad L. Taylor, SIMMERMAN LAW OFFICE, PLLC, Clarksburg, West Virginia, for Appellee Hornor Brothers Engineers.

———————————

DIANA GRIBBON MOTZ, Circuit Judge:

After a bench trial in this diversity case, the district court ordered Robert Lang and his construction business, Lang Brothers, Inc. (collectively "Lang") to pay Dan Ryan Builders, Inc. ("Dan Ryan") limited damages for breach of contract. Dan Ryan appeals, seeking additional damages. We affirm.

I.

We briefly summarize the relevant facts, which are undisputed.[1]

Lang owned seventy acres of land in West Virginia, on which he sought to build a housing development, Crystal Ridge Development. In 2005, pursuant to a Lot Purchase Agreement ("LPA"), Lang subdivided the land and contracted to sell Dan Ryan all 143 lots in Crystal Ridge. The LPA detailed the responsibilities of both parties, including lot inspection, fill compaction, and building schedules.

The parties also entered into a number of other written contracts in connection with the development, including a Contract with Independent Contractor ("fill slope contract"). They agreed in that contract that Lang would construct a fill

---

[1] Dan Ryan concedes that "[t]he district court's findings of fact are beyond reproach." Appellant's Br. 52. Similarly, Lang does not challenge them in any way.

slope that would provide grading on certain lots to accommodate the construction of houses. Lang completed the grading work and was paid in full by Dan Ryan.

In 2006, Dan Ryan paid Lang for the first twelve lots in accord with the LPA. Dan Ryan also entered into additional contracts with Lang including a second fill slope contract. In 2007, Dan Ryan purchased another five lots, and Lang continued to work on the infrastructure of the Crystal Ridge Development.

In March 2007, cracks appeared in the basement slab and foundation walls of a partially constructed house on one of the first lots that Dan Ryan had purchased. An engineering firm engaged by Dan Ryan concluded that stabilization of that house, as well as of another house displaying similar cracks, required remediation. These problems and their associated costs exacerbated existing tensions between Dan Ryan and Lang, ultimately leading to a "divorce" (the parties' term) between the two. The parties memorialized the divorce in the "First Amendment to Lot Purchase Agreement" (the Amendment). Under the Amendment, Dan Ryan agreed to purchase from Lang the remaining thirty-three lots in Crystal Ridge, and the parties' development responsibilities were apportioned differently.

In December 2007, the slope behind the lot that had first exhibited cracks began sliding downhill toward a nearby highway. A geotechnical study concluded that the slope had failed due to

4

its natural composition, soil type, and poor construction. Dan Ryan also encountered difficulties related to Crystal Ridge's stormwater management system, development permits, and entrance drive.

In December 2009, Dan Ryan filed this lawsuit against Lang seeking monetary damages. In its complaint, Dan Ryan asserts three causes of action. Initially and principally, Dan Ryan alleges negligence by Lang in connection with construction of the fill slope. Second, Dan Ryan alleges that Lang breached several of its contractual duties under both the LPA and the Amendment. The third cause of action alleges fraudulent misrepresentation by Lang; Dan Ryan abandoned this last claim at trial.

Following several pre-trial conferences and numerous pre-trial submissions, the district court held a five-day bench trial. The court admitted many exhibits and considered testimony from more than a dozen witnesses. After extensive post-trial submissions,[2] the court issued a detailed, ninety-page order setting forth findings of fact and conclusions of law.

---

[2] The court permitted the parties to submit up to eighty pages of proposed findings of fact and conclusions of law. After the deadline for these submissions had passed, Dan Ryan moved for leave to file a supplemental post-trial memorandum. The district court denied that motion.

5

On the contract claim, the district court awarded Dan Ryan $175,646.25 in damages and $77,575.50 in pre-judgment interest for breach of the LPA and the Amendment with respect to claims for repairs on the road leading to Crystal Ridge. The court found that Dan Ryan had failed to carry its burden of proof with respect to other asserted breaches of the LPA and the Amendment, i.e., those relating to an entrance easement, a stormwater management and erosion control system, and other "miscellaneous bad work." J.A. 2353.[3] Accordingly, the court denied further contract damages. The district court then rejected Dan Ryan's negligence claim. The court reasoned that this claim failed under West Virginia's "gist of the action" doctrine, which bars recovery in tort when the duty that forms the basis of the asserted tort claim arises solely from a contractual relationship. Dan Ryan timely noted this appeal.

We "review a judgment following a bench trial under a mixed standard of review -- factual findings may be reversed only if clearly erroneous, while conclusions of law, including contract construction, are examined de novo." Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). On appeal, Dan Ryan does not challenge the district court's resolution of its claim for breach of the LPA and the Amendment. Rather, Dan Ryan

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties to this appeal.

appeals only the court's determination that the "gist of the action" doctrine bars its tort claim, and the court's failure to recognize that its tort claim was really a claim for breach of the fill slope contracts.[4]

## II.

Dan Ryan offers two reasons why the district court erred in its "gist of the action" holding. We consider each in turn.

## A.

First, citing <u>Greenlaw v. United States</u>, 554 U.S. 237, 243 (2008), Dan Ryan contends that the "principle of party presentation" ought to have prevented the district court from relying on the "gist of the action" doctrine. The party presentation principle generally cautions a federal court to consider only the claims and contentions raised by the litigants before it. Dan Ryan asserts that the party presentation principle applies here because neither it nor Lang raised the "gist of the action" doctrine in submissions to the district court.

<u>Greenlaw</u> is the Supreme Court's most robust articulation of the party presentation principle. There, in language on which

---

[4] The district court also dismissed as moot the derivative claims Lang had brought against third-party defendant Hornor Brothers Engineering for contribution. Dan Ryan does not appeal that ruling.

7

Dan Ryan rests its claim, the Court stated that "in the first instance and on appeal, . . . we rely on the parties to frame the issues for decision." Greenlaw, 554 U.S. at 243. But although Greenlaw paints the concept of party presentation in broad brushstrokes, its holding is much narrower, i.e., "an appellate court may not alter a judgment to benefit a nonappealing party." Greenlaw, 554 U.S. at 244. In fact, other than in Greenlaw, the Court has invoked the party presentation principle only twice, both times in stressing the limits of the principle. See Wood v. Milyard, 132 S.Ct. 1826, 1833-34 (2012) (courts may sua sponte consider statute-of-limitations defenses overlooked by the State in habeas cases); Arizona v. California, 530 U.S. 392, 412-13 (2000) (courts may sua sponte raise a preclusion defense the parties failed to raise in special circumstances).

Moreover, neither in Greenlaw nor in any other case has the Court ever suggested that the party presentation principle constrains a court's fundamental obligation to ascertain controlling law. A party's failure to identify the applicable legal rule certainly does not diminish a court's responsibility to apply that rule. The judiciary would struggle to maintain the rule of law were it limited to the parties' competing assertions about what the law requires. For this reason, it is well established that "[w]hen an issue or claim is properly

8

before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991). Thus, the Supreme Court has long recognized that a "court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 447 (1993) (quoting Arcadia v. Ohio Power Co., 498 U.S. 73, 77 (1990) (alterations in original)).

Here, West Virginia's "gist of the action" doctrine is just such an "antecedent" and "dispositive" issue, since it goes to the duty element of any West Virginia tort claim. The "gist of the action" doctrine requires plaintiffs seeking relief in tort to identify a non-contractual duty breached by the alleged tortfeasor. See Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 577 (W. Va. 2013). "[T]he determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Lockhart v. Airco Heating & Cooling, Inc., 567 S.E.2d 619, 622 (W. Va. 2002) (internal quotation marks and citation omitted). To determine whether Dan Ryan established all of the required elements of a tort claim under West Virginia law, the district

9

court necessarily had to consider the "gist of the action" doctrine and identify the source of any asserted duty.

We must therefore reject Dan Ryan's contention that the party presentation principle barred the district court, when adjudicating a West Virginia tort claim, from considering whether the elements of such a claim had been met.[5]

B.

Dan Ryan also contends that the district court erred in holding that the "gist of the action" doctrine dooms its tort claim. This contention is meritless. Given that Dan Ryan's tort claim rests on Lang's asserted negligence in performing two contracts -- the LPA and the Amendment -- and not on any duty independent of those contracts, the "gist of the action" doctrine does indeed bar that claim.

"To prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a

---

[5] We note that third-party defendant Hornor Brothers Engineering did develop the "gist of the action" doctrine in its post-trial submissions to the district court. See J.A. 2186-88 ("[T]ort liability cannot arise from a breach of contractual duty. . . . [T]he principle is that if a defendant would have no duty of care to plaintiff but for the fact that the parties have a contract, no independent professional negligence claim may be maintained." (citing Lockhart, 567 S.E.2d 619, and other relevant West Virginia cases)). In so doing, Hornor alerted the court (and other parties) to the principle and its application to this case. Accordingly, this is hardly a case in which a court has "sall[ied] forth . . . looking for wrongs to right." Greenlaw, 554 U.S. at 244 (internal quotation marks and citation omitted).

10

legal duty to the plaintiff." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W. Va. 2004) (emphasis added). Under the "gist of the action" doctrine, a party to a contract can prevail on a negligence claim only if he can demonstrate "the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." Lockhart, 567 S.E.2d at 624 (internal quotation marks and citation omitted).[6] In other words, the negligence "action in tort [must] arise independent of the existence of the contract." Id. (internal quotation marks and citation omitted). "If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or non-feasance, it is, in substance, an action on the contract, whatever may be the form of the pleading." Cochran v. Appalachian Power Co., 246 S.E.2d 624, 628 (W. Va. 1978) (internal quotation marks and citation omitted).

---

[6] This requirement -- that a tort claim must rest on a non-contractual duty -- is hornbook law in most jurisdictions, even if they do not employ the "gist of the action" nomenclature. See Black's Law Dictionary (10th ed. 2014)(defining "tort" as "[a] civil wrong, other than breach of contract, for which a remedy may be obtained, . . . a breach of a duty that the law imposes"); Restatement (Third) of Torts:  Liab. for Econ. Harm § 3 (Tentative Draft No. 1, 2012) (explaining the general rule that "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties").

11

Only two years ago, in Gaddy, the West Virginia Supreme Court of Appeals reiterated this requirement. There, the court unequivocally held that a plaintiff cannot recover in tort if the complaint does no more than include "the bare bones averment that 'Defendants negligently . . . breached their agreement with' [the plaintiff]." 746 S.E.2d at 577. Here, a "bare bones" recitation is all that the Amended Complaint offered with respect to the fill slope claims: Dan Ryan alleged only that Lang "negligently performed or failed to perform various development obligations under the LPA and Amendment causing substantial damage to [Dan Ryan]'s property." J.A. 47 ¶ 39.

Gaddy further explains, in words that resonate here, that recovery in tort will be barred if any of the following factors is demonstrated: "(1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." Gaddy, 746 S.E.2d at 577. Here, of course, Dan Ryan specifically alleges that Lang's liability for "negligent[] perform[ance]" of two contracts -- the LPA and the Amendment -- caused its damages, and thus that

12

its tort claim asserting negligence in constructing the fill slope arises from these contracts.

In its briefing on appeal, Dan Ryan points to one additional source of Lang's supposed duty: "[t]he common law duty of care owed by a contractor." Appellant's Br. 30. But if, as Dan Ryan contends, "the gravamen of the breach was the failure to construct the fill slope in a good and workmanlike manner," id. at 31, Lang breached not an independent legal duty but an implied warranty arising out of -- in fact, created by -- the LPA and the Amendment. See Thacker v. Tyree, 297 S.E.2d 885, 887 (W. Va. 1982) ("In the area of construction contracts, . . . there is general recognition that an implied warranty of fitness and workmanlike quality attaches to such contracts.").

In sum, this is precisely the kind of case in which plaintiff's claims are "simply breach of contract claims masquerading as" tort claims. Gaddy, 746 S.E.2d at 577. See also Covol Fuels No. 4, LLC v. Pinnacle Mining Co., LLC, No. 14-1395, Slip Op. at 25 (4th Cir. 2015) (gist of the action doctrine applicable where party's tort claims "simply recast [its] claim for breach of contract"). The district court did not err in invoking the "gist of the action" doctrine, and in concluding that Dan Ryan's "negligence" claim was actually a claim for breach of contract. Thus, Dan Ryan's negligence claim fails as a matter of law.

13

III.

Alternatively, Dan Ryan now seeks damages under contract claims never alleged or even asserted before the district court. Specifically, Dan Ryan contends that the district court should have awarded it damages for a breach of the fill slope contracts.

Nowhere in its pleadings did Dan Ryan assert such a claim. The district court pointed out that Dan Ryan did not reference the fill slope contracts in its original complaint. Indeed, neither Dan Ryan's Amended Complaint, nor its pre-trial listing of contested issues of fact and law, nor its seventy-eight-page post-trial proposed findings of fact and conclusions of law even mentions the fill slope contracts -- let alone alleges that Lang breached them. Dan Ryan concedes, as it must, that this is so. Nevertheless, Dan Ryan maintains that "the absence of explicit reference to the [fill slope contracts] in the pleadings is of no consequence," because a claim as to breach of those contracts was tried by consent, as permitted by Federal Rule of Civil Procedure 15(b)(2). Appellant's Br. 48.

That Rule provides that "an issue not raised by the pleadings" will be treated as if it were raised, provided it is "tried by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2). Of course, Rule 15(b)(2) does not offer a failsafe for any and every faulty pleading. Rather, the Rule

14

sets forth "an exception to the general rules of pleading . . . when the facts proven at trial differ from those alleged in the complaint, and thus support a cause of action that the claimant did not plead." Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 901 (4th Cir. 1996). But "[b]ecause notice to the defendant of the allegations to be proven is essential to sustaining a cause of action, Rule 15(b) applies only when the defendant has consented to trial of the non-pled factual issues and will not be prejudiced by amendment of the pleadings to include them." Id. (emphasis added). Thus, Rule 15(b)(2) requires that a party expressly or impliedly consent to trial on an unpled claim and not be prejudiced by doing so. Dan Ryan cannot satisfy the Rule's requirements.

First, the record offers no support for Dan Ryan's assertion on appeal that Lang expressly consented to trial of any claim of breach of the fill slope contracts. Dan Ryan maintains Lang did so by including, among its pre-trial contested issues of fact, the question of whether "the Lang Defendants [are] liable to [Dan Ryan] for breach of contract in relation to" the fill slope contracts. J.A. 305. But Lang's single reference to a breach of the fill slope contract in its

15

pre-trial memorandum does not constitute consent.[7] This pre-trial submission demonstrates only that Lang regarded breach of the fill slope contracts as a potential issue, which might be raised by Dan Ryan at trial. Dan Ryan mistakes Lang's caution in this regard for consent.

In fact, as early as the final pretrial conference, Lang pointed out the absence of any reference to the fill slope contracts in the Amended Complaint. Lang's counsel specifically noted that "there were additional agreements" that "were not attached as exhibits to the complaint" and distinguished the obligations in those unpled contracts from the obligations in the LPA and the Amendment, on which Dan Ryan did rest its contract claims. J.A. 380-81. Similarly, in its post-trial submission, Lang noted that although the fill slope contracts were introduced as evidence at trial, they were not "even mentioned anywhere within the Complaint or Amended Complaint" and so could not provide Dan Ryan with a basis for recovery. Far from consenting to trial of unpled issues, then, Lang consistently and expressly disclaimed any consent to trial on the unpled claim of breach of the fill slope contracts.

---

[7] We have said as much before. See Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 221 (4th Cir. 2001) (en banc) (noting that even where an issue was "discussed on occasion during the course of [the] case," that alone did not establish trial by consent).

16

Moreover, in Dan Ryan's own submissions to the district court it confirmed that it did not advance such a claim. Rather, when Dan Ryan raised contract claims at trial, it expressly identified the pertinent contracts that formed the source of the asserted breach -- the LPA and the Amendment -- not the fill slope contracts. Furthermore, after trial, in its proposed findings of fact and conclusions of law, Dan Ryan set forth in numbered paragraphs each of the damage awards sought for breach of the LPA and the Amendment. Dan Ryan did not devote a numbered paragraph to any damage claim under the fill slope contracts. Dan Ryan did not propose that the district court find that Lang breached the fill slope contracts. And Dan Ryan did not ask the district court to hold that Lang had any specific obligations arising out of the fill slope contracts.

In sum, Dan Ryan's own statements about the theory of its case, as well as its repeated omission of the now-asserted breach of the fill slope contracts from any argument at trial or post-trial confirm what Lang's submissions make clear: Lang did not consent to trial of claims for breach of the fill slope contracts. See Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 401 (4th Cir. 1999) (when a party "sets out in [a list of] numbered paragraphs . . . its legal theories for recovery," its omission of a particular legal theory from those numbered paragraphs militates against a finding of trial by consent); see

17

also <u>Elmore v. Corcoran</u>, 913 F.2d 170, 173 (4th Cir. 1990). Accordingly, Dan Ryan did not put Lang on notice of any potential liability under those contracts.

Moreover, Dan Ryan cannot establish Lang's implied consent by demonstrating that evidence at trial clearly supported <u>only</u> this unpled claim. We have previously explained that admission without objection of evidence related to the unpled claim may be "an indicium of implied consent" to trial of that claim. <u>McLeod v. Stevens</u>, 617 F.2d 1038, 1040 (4th Cir. 1980). But if that evidence is also "germane" to claims expressly in the pleadings, its admission "cannot be treated as implied consent" to trial of the unpled claim. <u>Id.</u> at 1040-41. <u>Accord</u>, <u>Trinity Carton Co. v. Falstaff Brewing Corp.</u>, 767 F.2d 184, 193 (5th Cir. 1985); <u>see also</u> 6A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1493 (3d ed. 2014).

Dan Ryan contends that consent to trial of a breach claim under the fill slope contracts may be implied from its evidence related generally to the slope failure and from the admission of the two fill slope contracts themselves. But evidence of the slope failure was admitted in support of the claim that Lang <u>negligently</u> constructed the slopes, not that it breached the

18

fill slope contracts.[8]  Accordingly, the evidence was "germane"

to an asserted tort claim actually present in Dan Ryan's

pleadings and cannot establish trial by consent of a phantom

contract claim.  Admission of the fill slope contracts, without

more, cannot establish consent to trial of a claim that those

contracts were breached.

Moreover, Lang would undoubtedly be prejudiced if we were

to accept Dan Ryan's contention on appeal that the opposite is

true.  See Withrow v. Williams, 507 U.S. 680, 696 (1993)

(holding that where the record "reveals neither thought, word,

nor deed . . . that could be taken as any sort of consent" to

trial of an unpled claim, the party "was manifestly

prejudiced").

Dan Ryan had opportunities before, during, and after trial

to clarify its contract claims against Lang.[9]  Yet at none of

---

[8] Nor does the district court's observation that Lang "failed to live up to its contractual obligations" under the fill slope contracts establish that breach of those contracts was tried by consent.  J.A. 2375.  For the court had earlier identified the LPA and the Amendment as the sole bases for all breach of contract claims alleged by Dan Ryan.  See J.A. 2324-56.  Further, the court explained that any "[m]ention of the Fill Slope Contract[s] was conspicuously absent from" Dan Ryan's complaint.  J.A. 2373.  Thus the court was clear that the claims Dan Ryan might have alleged are distinct from the claims it actually did allege.

[9] Dan Ryan repeatedly failed to clarify the precise claims under which it sought relief and the specific evidence supporting each claim.  Examination of the trial transcript (Continued)

19

these junctures did Dan Ryan contend that Lang breached the fill slope contracts.  The omission of the claim at <u>one</u> of these stages in the litigation -- in the amended complaint, or in the pre-trial submissions, or in the presentation of the theory of the case, or in the post-trial submissions -- might evince inadvertence and so allow the district court to consider the claim.  But the repeated omission of the claim permits only one conclusion:  Dan Ryan's now-asserted claim that Lang breached the fill slope contracts was not tried by consent, it was simply omitted.[10]

IV.

This is a messy case, spanning four years and thousands of pages of trial submissions.  During the course of such

---

reveals the district court's frustration with Dan Ryan's haphazard submissions throughout the trial.  For example, in an order issued after trial, the court instructed that "Dan Ryan shall clarify, within its proposed findings of fact and conclusions of law/post-trial legal memorandum, or in an attachment thereto, which of its claimed damages flow from its breach of contract theory and which flow from its negligence theory."  Summ. Order 4, Aug. 30, 2012, ECF No. 249.  But Dan Ryan utterly failed to do this.

[10] In the alternative, we hold that Dan Ryan has waived any breach of contract claim based on the fill slope contracts.  <u>See</u> <u>Helton v. AT&T Inc.</u>, 709 F.3d 343, 360 (4th Cir. 2013) (holding that appellant's argument not raised during a bench trial or in proposed findings of fact and conclusions of law is waived on appeal).

protracted litigation, parties must be vigilant not to lose sight of the necessity of pleading and proving all of the elements of each cause of action.

The district court properly dismissed Dan Ryan's tort claim, alleging negligence in construction of the fill slope, because Dan Ryan rested that claim solely on asserted breach of two contracts -- the LPA and the Amendment. We now hold that Dan Ryan never alleged, and the parties never consented to trial on, a claim of breach of the fill slope contracts. Contrary to Dan Ryan's contention, this result does not unfairly penalize it for a purely formal error. Rather, it simply holds Dan Ryan to the requirements of the law. A claim grounded on breach of contract (here, the LAP and the Amendment) does not give rise to tort liability, and a claim never pled (here, breach of the fill slope contracts) will not be regarded as pled unless actually tried by consent. These are the only fair standards, for without them litigants and courts alike would be unable to ever adequately prepare for trial. Parties would be forced to defend against shadow claims, and trial courts would be forced to search, as for a needle in a haystack, for unpled causes of action purportedly hiding in the parties' submissions.

It is not the responsibility of a trial court to wade through ambiguously or incorrectly labeled allegations in pursuit of any potential basis for awarding relief. In the case

21

at hand, the district court did a commendable job of sorting through a museum of non-sequiturs to identify the plaintiff's meritorious claims. Notwithstanding Dan Ryan's dissatisfaction with the resulting judgment, it is clear that the district court committed no error.

The judgment of the district court is

AFFIRMED.

GREGORY, Circuit Judge, concurring in part and dissenting in part:

Dan Ryan Builders, Inc. ("Dan Ryan") contracted with Robert Lang and his construction business, Lang Brothers, Inc. (collectively "Lang") to fix the steep gradation of a portion of land that would not have otherwise supported the construction of homes. Lang botched the job, and Dan Ryan had to pay $1,722,104.91 to fix it.[*] The district court found all the elements of a breach of contract: that the contract was enforceable, J.A. 2369 n.43, that Dan Ryan paid Lang in full for the work, J.A. 2307, and that Lang "[u]nquestionably . . . failed to live up to its contractual obligations, and [Dan Ryan] suffered damages as a result," J.A. 2375. Yet, because Dan Ryan did not formally amend its complaint to name one of the several contracts at issue, the district court allowed Lang to escape liability. I cannot agree with this inequitable result, which is exactly what Rule 15(b) of the Federal Rules of Civil Procedure was designed to prevent. I therefore must dissent from Part III of my good colleagues' opinion.

Rule 15(b) allows liberal amendment of the pleadings to conform to the evidence presented at trial. See Equal Emp't

---

[*] This figure is based on Dan Ryan's post-trial submission asserting that expenses related to the slope remediation totaled $1,772,104.91 before prejudgment interest. Pl.'s Proposed Findings of Fact and Conclusions of Law at 70, ECF No. 256.

23

Opportunity Comm'n v. Gen. Elec. Co., 532 F.2d 359, 367 n.17 (4th Cir. 1976). Formal amendment, however, is not always required. See Fed. R. Civ. P. 15(b)(2). "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings," and "failure to amend does not affect the result of the trial of that issue." Id. This liberalism was meant to obviate the necessity of a new trial every time an opposing party points to a technical deficiency in pleading. See 6A Fed. Prac. & Proc. Civ. § 1491 (3d ed. 2014) [hereinafter Fed. Prac. & Proc.]; see also Deere & Co. v. Johnson, 271 F.3d 613, 621 (5th Cir. 2001) ("As has been often said, the principal purpose of Rule 15(b) is judicial economy."). In fact, the rule has always been construed to promote resolution of cases on the merits, rather than on the pleading skills of counsel. See Fed. Prac. & Proc. § 1493. In other words, Rule 15(b) helps litigants and the courts "avoid the tyranny of formalism." Kirkland v. District of Columbia, 70 F.3d 629, 634 (D.C. Cir. 1995); Dunn v. Ewell (In re Santa Fe Downs, Inc.), 611 F.2d 815, 817 (10th Cir. 1980).

The majority insists on formalism, finding no implied consent to try the issue of whether Lang breached the Fill Slope Contract. However, this was the entire gravamen of the five-day trial. We may find implied consent where the defendant:  1)

24

fails to object to evidence relating to the unpleaded issue; 2) actually produces evidence bearing on the issue; or 3) offers direct arguments contesting the issue. See Fed. Prac. & Proc. § 1493; see also McLeod v. Stevens, 617 F.2d 1038, 1040 (4th Cir. 1980) (finding admission of evidence without objection an indicium of implied consent). All three criteria are present here. Even though Dan Ryan's post-trial submission omitted mention of the Fill Slope Contract, Lang did not object to introduction of the contract into evidence, and the issue also had been teed up since at least the parties' pre-trial statement. Dan Ryan specified in its brief statement of its claims that "the Lang Defendants owed legal duties to [Dan Ryan] from four separate and distinct contractual undertakings." J.A. 293-94. Dan Ryan's theory was unambiguously that Lang breached these duties by "[i]mproper placement and compaction of fill material." J.A. 294. Lang confronted these arguments head on in its own section of the pre-trial statement: "The Lang Defendants did not breach any contract with [Dan Ryan]." J.A. 296. Lang's theory was that even if it had followed proper construction practices, "the slope would have still failed due to a layer of colluvium in the soil." J.A. 301. It thus sought to place the blame on Horner Brothers Engineering, which Lang alleged drew up lot grading plans that did not take into account certain soil properties.

In this way, Lang was fully prepared to litigate, and indeed litigated in substance, whether it was "liable to [Dan Ryan] for breach of contract in relation to [the Fill Slope Contract]." J.A. 305 (contested issue from pre-trial statement proposed by Lang). During the trial, "[t]he experts all agree[d] that [Lang Brothers Inc.] did not employ the standard construction practices that, if applied in the first instance, would have ensured the slope's stability." J.A. 2374 n.44. It turns out that Lang built the fill slope based on rudimentary drawings that were never meant to serve as a full set of engineering plans and specifications. Lang did not ensure the slope foundation was built according to the proper ratio, and did not install the appropriate draining system, among other failings. Basically, Lang picked up dirt from one part of the development and set it on top of another. The district court had no trouble ascertaining that, according to the "credible evidence," Lang's "poor construction practices were the sole proximate cause of the slope failure." J.A. 2374 n.44.

This is not a case where the evidence "incidentally tends" to establish that Lang's shoddy construction breached a contractual duty to build a viable fill slope. Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 401 (4th Cir. 1999). In determining whether an issue has been tried by consent, we rightly should be concerned with the defendant's potential lack

26

of opportunity to defend against a new allegation. But here, in addition to Lang having had adequate notice of just what was at issue, treating the Fill Slope Contract as if it had been included in the pleadings in no way prejudices Lang. Prejudice occurs, like in the Withrow case cited by the majority, where there is "failure to afford [a litigant] an opportunity to present evidence bearing on that [new] claim's resolution." Withrow v. Williams, 507 U.S. 680, 696 (1993). Lang does not even claim any potential prejudice, perhaps because it must admit that inclusion of the Fill Slope Contract in Dan Ryan's complaint would not have compelled presentation of any different evidence, or reliance on any alternative theory of defense.

Given the ample notice, implied consent, and utter lack of prejudice to Lang, I would reverse the district court and find a breach of the Fill Slope Contract.