# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Dan Ryan Builders, Inc., Dan Ryan Builders Realty, Inc., DRB Enterprises, Inc., Monocacy Home Mortgage, LLC, Christopher Rusch, and Crystal Rankin,**
**Defendants Below, Petitioners,**

**vs.) No. 18-0579 (Harrison County No. 09-C-57-1)**

**Frank M. Williams, and Diana P. Williams, et al.,**
**Plaintiffs Below, Respondents.**

**FILED**
**November 6, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioners Dan Ryan Builders, Inc., Dan Ryan Builders Realty, Inc., DRB Enterprises, Inc., Monocacy Home Mortgage, LLC, Christopher Rusch, and Crystal Rankin, by counsel Avrum Levicoff and Julie Brennan, appeal the May 30, 2018 order of the Circuit Court of Harrison County denying petitioners' motion to compel arbitration ("renewed motion" or "renewed motion to compel arbitration"). Respondents Frank M. Williams, and Diana P. Williams, et al., by counsel James A. Varner, Sr., Debra Tedeschi Varner, James N. Riley, and Michael J. Romano filed a response in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in failing to compel arbitration in this case.

After considering the parties' written and oral arguments, as well as the appendix record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

A brief examination of the factual and procedural posture of this case is necessary to understand our resolution of this appeal. The case began more than eleven years ago and arose out of the construction of a residential community known as "Crystal Ridge" located in Bridgeport, West Virginia. *See Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W. Va. 549, 803 S.E.2d 519 (2017) (discussing underlying facts). The land used for the Crystal Ridge development was owned by members of the Robert S. Lang family, including Robert and his brothers (referred to as "the Langs").[1] On June 30, 2005, the Langs entered into a "Lot Purchase Agreement" with Dan Ryan Builders ("Dan Ryan")[2] as part of a plan to create 143 single-family house lots. *See id.*

---

[1] Mr. Lang transferred ownership of the property to a family business, Crystal Ridge Development. *See Dan Ryan Builders*, 239 W. Va. at 552, 803 S.E.2d at 522.

[2] According to respondents, petitioners'

1

at 552, 803 S.E.2d at 522. By August 2006, Dan Ryan purchased its first lots in Crystal Ridge pursuant to the Lot Purchase Agreement, and almost immediately began selling the lots and constructing homes thereon for the purchasers. *See id*. at 552-53, 803 S.E.2d at 522-23. By March, 2007, fill slope behind certain lots began to move, causing the opening of large fissures in the ground and resultant damages to lots and homes. *See id*. at 553, 803 S.E.2d at 523.

On February 9, 2009, respondents, who are purchasers of lots and homes in Crystal Ridge, filed a lawsuit against petitioners[3] alleging various tort and property claims due to development-wide soil movement, which caused damage to respondents' properties.

Almost thirteen months after the original complaint was filed,[4] petitioners filed "Defendants' Motion to Dismiss Complaint and Compel Arbitration." The basis for petitioners'

> business model was a 'soup to nuts' approach with various entities under common ownership controlling the initial development identification, then the real estate agency sales, then the financing, and finally the construction of the home itself. The Petitioners pressured all of the Respondents to use Petitioners' legal counsel for the purchase and closing of the real estate transaction, which most Respondents did. This business model allowed the Petitioners to control nearly every aspect of the transaction . . . .

[3] Respondents have never asserted any claims against the Lang family or Horner Brothers, which was the engineering firm that provided plans for the movement of earth materials necessary to develop Crystal Ridge. *See id*. at 553, 803 S.E.2d at 523.

[4] As an ancillary matter, on December 8, 2009, petitioner Dan Ryan filed a lawsuit against the Langs arising out of the Crystal Ridge development in the United States District Court for the Northern District of West Virginia, alleging causes of action for negligence, breach of contract, and indemnification and contribution. *See id.* at 553-54, 803 S.E.2d at 523-34. Dan Ryan amended its complaint to remove the indemnification and contribution claims because the district court, applying federal law, found that those claims should have been asserted in the state court action. *See id*. at 554, 803 S.E.2d 534.

In August, 2012, the federal court conducted a bench trial on Dan Ryan's remaining claims against the Langs. On September 24, 2013, in a ninety-page decision, the court found that the Langs breached only one of its duties owed to Dan Ryan under one contract and awarded Dan Ryan $175,646.24 in damages plus pre-judgment interest in the amount of $77,615.24. *See Dan Ryan Builders, Inc. v. Crystal Ridge Dev.*, Inc., No. 1:09CV161, 2013 WL 5352844 (N.D.W.Va. Sept. 24, 2013). Dan Ryan appealed and the district court's decision was affirmed by the United States Court of Appeals for the Fourth Circuit. *See Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 985 (4th Cir. 2015) (noting "[t]his is a messy case, spanning four years and thousands of pages of trial submissions[,]" and also recognizing that Dan Ryan's claims in the action were "ambiguously or incorrectly labeled allegations in pursuit of any potential basis for awarding relief. In the case at hand, the district court did a commendable job of sorting through a museum of non-sequiturs to identify the plaintiff's [Dan Ryan's] meritorious claims.").

motion was language contained in the standardized form Agreements of Sale ("Sales Agreements") and an enrollment form of a Limited Warranty Agreement,[5] which were used by petitioners in respondents' purchase of their respective lots and homes in Crystal Ridge. Specifically, the Sales Agreements contained the following arbitration provision, in part:

> 19. ARBITRATION.
> (a) Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by Us, or any agents and/or employees thereof, (with the exception of "Consumer Products" as defined by the Magnuson-Moss Warranty Federal Trade Commission Improvements Act, 15 U.S.C. Section 2301 et seq. and the regulations promulgated thereunder) shall be settled and finally determined by arbitration and not in a court of law, irrespective of whether or not such claim arises prior to or after Settlement hereunder, pursuant to the Construction Industry Arbitration Rules and the Supplementary Procedures for Residential Construction Disputes of the American Arbitration association ("AAA") then in effect. . . .

Petitioners argued, inter alia, that the relevant arbitration provisions were valid and enforceable, were not contracts of adhesion, and were not unconscionable. In sharp contrast, respondents argued that the Sales Agreements were contracts of adhesion, and the arbitration provision in those agreements was unfair, unconscionable and unenforceable, and lacked neutrality in the selection and composition of the forum/tribunal for dispute resolution.

After extensive briefing on the issues raised in petitioners' motion, the circuit court initially issued a letter ruling dated December 5, 2011, stating that after reviewing the entirety of the parties' filings, it found that the Sales Agreements, which contained the arbitration provision, were contracts of adhesion; and further that the arbitration provision in the Sales Agreements was "not bargained for" and was "unconscionable and invalid." On February 6, 2012, the circuit court entered its Order Denying Defendants' Motions to Dismiss Complaint and Lifting Stay of Discovery, setting forth specific findings of fact and conclusions of law supporting its determination that the arbitration provision was unenforceable.

On March 21, 2012, the circuit court entered an Agreed Order reflecting a series of stipulations entered between the parties during a Status Conference, which allowed for the case to proceed while affording petitioners an opportunity to pursue appellate review of the order denying the motion to compel arbitration. The parties agreed that during this period of time, petitioners would not incur any negative consequences, such as waiver or estoppel, of their "contention that the case should be ordered to arbitration[]" by their participation in discovery during the appeal process. As the Agreed Order reflects, "participation by the defendants in discovery and other pretrial phases of the case in this Court will not preclude the defendants from seeking appellate

---

[5] The Limited Warranty purported to provide purchasers with protection for certain defects in the structure purchased.

review of the Court's arbitration ruling . . . ." The circuit court, however, reiterated its prior ruling that "the plaintiffs' claims against Dan Ryan Builders will not be ordered to arbitration." This Agreed Order was entered with the full understanding that petitioners were going to undertake either an appeal or propose certified questions, as the order also contains provisions for handling any discovery "[i]n the event that the appellate process should result in a reversal of this Court's arbitration ruling, and/or in the vacation of this Court's written Order of February 6, 2012[.]" Finally, the circuit court directed in the Agreed Order that "[a]t the request of the defendants, the parties will endeavor to confer and agree upon wording for a certified question . . . regarding the arbitration ruling. . . . Upon submission, the Court may then certify for interlocutory appeal such agreed question or questions. . . ." Despite extensive discussions, the parties were unable to agree on the wording of any certified question and no other procedural measures for appellate review, either by direct appeal or petition of writ of prohibition, were taken by petitioners regarding the circuit court's February 6, 2012 order.

On March 25, 2012, Dan Ryan Builders filed a third-party complaint against Crystal Ridge Development, Robert Lang, Lang Brothers, Inc., and Horner Brothers Engineers alleging claims for contribution, contractual indemnification and breach of contract.[6] In addition to pursuing these third-party claims, the appendix record demonstrates that petitioners have engaged in numerous depositions and other proceedings, and *never* appealed or pursued any other mechanism for appellate review by this Court of the February 6, 2012 order.

Six years later, on January 8, 2018, petitioners filed "Defendants' Motion to Compel Arbitration" ("renewed motion"). While petitioners failed to specify, procedurally, under what West Virginia Rule of Civil Procedure their renewed motion was based, the circuit court treated the motion as one filed pursuant to Rule 60(b), wherein petitioners were seeking relief from its February 6, 2012, order denying petitioners' motion to compel arbitration.[7] The circuit court denied petitioners' motion, sua sponte, finding that it lacked timeliness. It is from this order that petitioners now appeal.

This case involves our review of the circuit court's order denying petitioners' renewed motion to compel arbitration filed pursuant to West Virginia Rule of Civil Procedure 60(b).[8]

---

[6] The circuit court ultimately granted the Langs and Horner Brothers summary judgment on the third-party claims based upon res judicata, following the federal court's resolution of Dan Ryan's claims against the Langs. *See Dan Ryan Builders*, 239 W. Va. at 557-58, 803 S.E.2d at 527-28. We affirmed the circuit court's grant of summary judgment on appeal. *Id*. at 532, 803 S.E.2d at 562.

[7] W. Va. R. Civ. P. 60(b) (providing for relief from a final judgment because of mistakes, inadvertence, excusable neglect, unavoidable cause, newly discovered evidence, fraud, and other reasons justifying such relief).

[8] Petitioners argue on appeal that the circuit court erred in treating the motion as one filed pursuant to Rule 60(b) and should have considered it under Rule 54(b) of the West Virginia Rules of Civil Procedure. We reject this argument as petitioners failed to identify any Rule of Civil Procedure upon which their motion was based when it was filed. *See Shaffer v. Acme Limestone Co.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999) ("Our general rule is that

According to syllabus point two of *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 474 S.E.2d 872 (1996),

> [w]hen a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion, the motion will be considered to be either a Rule 59(e) motion to alter or amend a judgment or a Rule 60(b) motion for relief from a judgment order. If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e). If the motion is filed outside the ten-day limit, it can only be addressed under Rule 60(b).

In so holding, Justice Cleckley, noted that

> the weight of the authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit. . . . In other words, a Rule 60(b) motion to reconsider is simply not an opportunity to reargue facts and theories upon which a court has already ruled.

*Powderidge*, 196 W.Va. at 705-06, 474 S.E.2d at 885-86 (footnote and citations omitted).

As we have previously held, "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. Pt. 3, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974). Further, "[i]n reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." 157 W. Va. at 778, 204 S.E.2d at 86, Syl. Pt. 4.

It is clear that there was no abuse of discretion by the circuit court in this case, and we decline to address petitioners' two assigned errors,[9] because they have waived their right to

---

nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered."); *see also, Whitlow v. Bd. of Educ.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal.").

[9] Petitioners argue that the circuit court erred: 1) in concluding without sufficient evidentiary support that an arbitration agreement within a cohesive agreement for the construction and sale of real property was an unconscionable contract of adhesion; and 2) in ruling that the subject arbitration agreements were unconscionable and therefore unenforceable, which decision is "directly at odds with current decisional law."

arbitration and to appeal.[10]  In syllabus point 6 of *Parsons v. Halliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016), the Court held that

> *[t]he right to arbitration, like any other contract right, can be waived.*  To establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language. There is no requirement that the party asserting waiver show prejudice or detrimental reliance.

(Emphasis added).  We further held in *Parsons* that

> [t]he common-law doctrine of waiver focuses on the conduct of the party against whom waiver is sought, and requires that party to have intentionally relinquished a known right. *A waiver may be express or may be inferred from actions or conduct, but all of the attendant facts, taken together, must amount to an intentional relinquishment of a known right.* There is no requirement of prejudice or detrimental reliance by the party asserting waiver.

*Id.*, Syl. Pt. 2, in part (emphasis added); *see also State ex rel. Barden v. Robeson Corp. v. Hill*, 208 W. Va. 163, 168, 539 S.E.2d 106, 111 (2000) (stating that "the right to arbitration is purely a matter of contract. Thus, 'arbitration agreements are [as much] enforceable as other contracts, but not more so.' *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 1806 n.12, 18 L.Ed.2d 1270, 1277 n.12 (1967). As with any contract right, an arbitration requirement may be waived through the conduct of the parties.").

In this case, petitioners' 2018 renewed motion to compel arbitration was nothing more than an attempt to breathe life into the long-dead issues contained in their Motion to Dismiss Complaint and Compel Arbitration, which was filed on March 9, 2010, denied by the circuit court in 2012, and never appealed or challenged on a writ or certified question.  The filing of the first motion to compel unequivocally establishes that petitioners knew they had a contractual right to arbitration.

---

[10] As we have consistently recognized,

> we may affirm on grounds different than those relied upon by a trial court. *See Schmehl v. Helton*, 222 W.Va. 98, 106 n.7, 662 S.E.2d 697, 705 n.7 (2008) ("[T]his Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not."); *Murphy v. Smallridge*, 196 W.Va. 35, 36-37, 468 S.E.2d 167, 168-69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.").

*Curry v. W. Va. Consol. Pub. Ret. Bd.*, 236 W. Va. 188, 194, n.6, 778 S.E.2d 637, 643 n.6 (2015).

*See Parsons*, 237 W. Va. at 141, 785 S.E.2d at 848, Syl. Pt. 6. However, following the entry of the February 6, 2012 order, and for the six years that ensued, all of petitioners' conduct has been focused on litigating this case – not seeking appellate review of the circuit court's 2012 order. As the appendix record shows, petitioners conducted depositions, traded discovery with the parties, and filed pleadings and motions in circuit court. Succinctly stated, petitioners have spent countless hours litigating an action that they profess should be arbitrated, which conduct demonstrates a knowing, express waiver of their contractual right to arbitration.

Further, we find petitioners waived their right to seek appellate review of the circuit court's February 6, 2012 order denying their motion to compel arbitration. Despite the circuit court providing petitioners an opportunity to certify questions to this Court as indicated by the 2012 Agreed Order, petitioners failed to pursue that opportunity. Petitioners likewise could have filed a petition for writ of prohibition in this Court but failed to do so. This Court had already recognized in *State ex rel. AT&T Mobility, LLC v. Wilson*, 226 W. Va. 572, 703 S.E.2d 543 (2010), that a writ of prohibition may be utilized to obtain review of a trial court's decision regarding arbitration when the lower court exceeds its powers. *Id*. at 577, 703 S.E.2d at 548; *see State ex rel. Saylor v. Wilkes*, 216 W. Va. 766, 772, 613 S.E.2d 914, 920 (2005) (stating that "a petition for a writ of prohibition is an appropriate method by which to obtain review by this Court of a circuit court's decision to compel arbitration."). Finally, petitioners could have filed a direct appeal with this Court of the February 6, 2012 order, but again failed to do so. *See* Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013) ("An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."). Instead, petitioners obtained a circuit court order in 2012 denying their contractual right to arbitrate respondents' claims and sat on that denial of their right for six years, never seeking or attempting to seek appellate review of the circuit court's ruling in a timely manner. Then, in what only can be described as pure legal gamesmanship, petitioners filed a renewed motion to compel arbitration in order to pursue the appellate review that they previously had waived. The circuit court correctly denied petitioners' renewed motion to compel arbitration.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 6, 2020

**CONCURRED IN BY:**
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**
Chief Justice Tim Armstead
Justice Evan H. Jenkins

7

Armstead, C.J., dissenting:

I respectfully dissent from the majority's conclusion that petitioners waived their right to arbitration and appeal.

As we explained in Syllabus Point 6, in part, of *Parsons v. Halliburton Energy Services, Inc.*, "[t]o establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party . . . either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language." 237 W. Va. 138, 785 S.E.2d 844 (2016). The fundamental question, however, is not whether the allegedly waiving party somehow participated in litigation; it is whether, by its participation in litigation (or other conduct), the party "intentionally relinquished" its right to arbitration. *Id*. at 142, 785 S.E.2d at 848, syl. pt. 2, in part. "A waiver . . . may be inferred from actions or conduct, but all of the attendant facts, taken together, *must amount to an intentional relinquishment of a known right*." *Id*. (emphasis added).

All of the attendant facts in this case, taken together, show that petitioners *never intentionally relinquished* their right to arbitration or appeal, regardless of how many depositions they took, how many discovery requests they served, or how many pleadings and motions they filed. Petitioners' first filing in the circuit court was a motion to dismiss the complaint and compel arbitration. After the circuit court denied petitioners' motion and subsequently entered an agreed order on March 21, 2012, preserving their right to appeal the denial, petitioners filed an answer that invoked "a valid and binding arbitration clause" as its third affirmative defense.

The March 21, 2012 agreed order, which memorializes stipulations that the parties made during a January 2012 status conference, provides in relevant part:

> During the Status Conference, and thereafter, the parties, by and through their counsel, entered into a series of stipulations, which the Court now memorializes in this Agreed Order.
>
> *The Court notes the exceptions and objections of the defendants to the arbitration ruling above-referenced*, including the findings of fact and conclusions of law ultimately set forth by the Court in its written Order of February 6, 2012.
>
> The parties *will proceed with litigation* in this Court on all pleading[,] discovery, pretrial and other case developmental phases of the case. *Such participation by the defendants*, including Dan Ryan Builders, *shall not effectuate any waiver, nor any estoppel, nor will participating in such proceedings otherwise impair or impede the defendants' contention that the case should be ordered to arbitration.* Further, the *participation by the defendants in discovery and other pretrial*

8

*phases of the case in this Court will not preclude the defendants from seeking appellate review of the Court's arbitration ruling*, nor the findings of fact or conclusions of law set forth in this Court's written Order of February 6, 2012.

> *In the event that the appellate process should result in a reversal of this Court's arbitration ruling*, and/or in the vacation of this Court's written Order of February 6, 2012, all pleadings[,] discovery material, admissions, expert disclosures, and other matters developed in the case in the interim *shall be available for use in any arbitration proceeding* that may ultimately be ordered by this Court, or by any appellate court. Similarly, any deposition testimony, or other evidentiary matters developed in proceedings in this Court *shall be available for use in any such arbitration*, should arbitration be ordered, pursuant to the rules of admissibility with respect to such matters as may apply in any such arbitration.

> At the request of the defendants, the parties will *endeavor to confer and agree upon wording for a certified question or questions regarding the arbitration ruling* which is more fully set forth in the Court's written Order entered February 6, 2012. *Upon submission*, the Court may then certify for interlocutory appeal such agreed question or questions, upon review, or submit its own certified questions, as the case may be.

> The certification of the question or questions *will not stay this case, and the case shall proceed in the usual manner, unless and until the appellate process results in a reversal* of this Court's February 6, 2012 Order, or otherwise results in an order transferring this case or any of the claims in this case to arbitration.

(Emphasis added.)

Thus, according to the agreed order: (a) petitioners' exceptions and objections to the circuit court's refusal to compel arbitration were preserved; (b) petitioners would participate in litigation, but their participation did not waive or impair their right to contend that the case should be arbitrated; (c) petitioners' participation in the litigation did not preclude them from appealing the circuit court's ruling; (d) the fruits of petitioners' litigation activities would be available for use during arbitration when and if the circuit court was reversed on the arbitration issue; (e) the parties pledged to "endeavor to confer and agree"—not to "confer and agree" but to "*endeavor* to confer and agree"—on one or

more certified questions to be submitted for the circuit court's consideration; (e) "[u]pon *submission*," the circuit court would decide whether to submit the parties' proposed questions or certified questions of its own formulation; and (f) certification would not bar the case from moving forward until such time, if any, that the circuit court's arbitration decision was reversed.

As the majority observes, petitioners tried and failed to reach agreement on any certified question to propose to the circuit court.[11]  However, nothing bound the parties to *reach* agreement, and nothing bound petitioners to attempt other measures if their efforts to reach agreement failed.  By contrast, the agreed order is quite clear that petitioners were not waiving their right to arbitration or their right to appeal on that issue if they participated in the case.  Thus, in light of the plain language of the agreed order, I find no basis for a finding that petitioners intentionally relinquished their contractual right to arbitration or their right to appeal.

As a further basis of my dissent, I believe the circuit court erred when it applied Rule 60(b) of the West Virginia Rules of Civil Procedure to petitioners' January 2018 motion to compel arbitration.  Petitioners expressly invoked the correct rule in their January 2018 motion to compel arbitration and correctly understood the interlocutory nature of the circuit court's February 2012 order: "The order declining to enforce the instant arbitration provision is interlocutory, and as such is 'subject to revision at any time before the entry of judgment . . . .'  W.Va. R.C.P. 54(b)."  The circuit court even acknowledged that petitioners invoked Rule 54 in its May 2018 order denying petitioners' motion to compel arbitration, despite finding that petitioners "fail[ed] to cite particular rule authority" for their motion.  However, even if petitioners *had failed* to invoke Rule 54(b), the circuit court incorrectly considered petitioners' motion under Rule 60(b).  "We have previously recognized that Rule 60(b) by its plain terms applies to a *final* judgment, order, or proceeding.  Interlocutory orders and judgments are not within the provisions of 60(b), but are left to the plenary power of the court that rendered them to afford such relief from them as justice requires."  *Hubbard v. State Farm Indem. Co.*, 213 W. Va. 542, 551, 584 S.E.2d 176, 185 (2003) (internal quotation marks and citations omitted).  In *Hubbard*, we also held that

> [a]n otherwise interlocutory order that is not expressly
> certified as final by using the language required by Rule 54(b)
> of the West Virginia Rules of Civil Procedure remains
> interlocutory so long as the affected party does not seek an

---

[11] I note that, on page 4 of the decision, the majority refers to the parties' "extensive discussions" about "the wording of any certified question[.]"  On page 7, however, the majority asserts that petitioners "failed to pursue that opportunity."  If the parties had "extensive discussions" about how to formulate a certified question, petitioners "pursue[d] that opportunity."

appeal. Consequently, when a party seeks to have a circuit court reconsider its ruling on such an order prior to entry of a final judgment disposing of the entire case, the interlocutory order *should not be reviewed under Rule 60(b)* of the West Virginia Rules of Civil Procedure.

*Id*. at 544, 584 S.E.2d at 178, syl. pt. 3 (emphasis added).

Accordingly, I dissent, and I have been authorized to state that Justice Jenkins joins me in dissenting from the majority's decision.