803 S.E.2d 519

**DAN RYAN BUILDERS, INC., Third-Party Plaintiff Below, Petitioner**

v.

**CRYSTAL · RIDGE DEVELOPMENT, INC., Lang Brothers, Inc., And Robert S. Lang, Third-Party Defendants Below, Respondents**

and

**Dan Ryan Builders, Inc., Third-Party Plaintiff Below, Petitioner,**

v.

**Horner Brothers Engineers, Third-Party Defendant Below, Respondent.**

No. 16-0401, No. 16-0402

Supreme Court of Appeals of West Virginia.

Submitted: April 18, 2017·

Filed: June 8, 2017

Avrum Levicoff, Esq., Julie A. Brennan, Esq., The Levicoff Law Firm, P.C., Pittsburgh, Pennsylvania, Counsel for the Petitioner

Tiffany R. Durst, Esq., Nathaniel D. Griffith, Esq., Pullin, Fowler, Flanagan, Brown & Poe, PLLC, Morgantown, West Virginia,

Counsel for Respondents Crystal Ridge Development, Inc.; Lang Brothers, Inc.; and Robert S. Lang

Frank E. Simmerman, Jr., Esq., Chad L. Taylor, Esq., Frank E. Simmerman, III, Esq., Simmerman Law Office, PLLC, Clarksburg, West Virginia, Counsel for Respondent Horner Brothers Engineers

Justice Ketchum:

In these consolidated appeals from the Circuit Court of Harrison County, we examine the *res judicata* effect of a federal court judgment on a state court third-party complaint. The circuit court found that the federal court case involved the same parties as those in the third-party complaint; the third-party complaint was based on the same evidence as the action litigated in federal court; and the final federal court judgment resolved the merits of the parties' disputes. The circuit court therefore dismissed the third-party complaint on *res judicata* grounds.

As we discuss below, we affirm the circuit court's ruling.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the construction of a residential community called "Crystal Ridge" on an empty 70-acre tract in Harrison County, West Virginia. The family of Robert S. Lang owned the tract, and in 2005, Mr. Lang transferred ownership to a family company, Crystal Ridge Development, Inc. Mr. Lang anticipated that excavation, grading and construction of the housing lots and the infrastructure—the roads, drainage culverts, utilities and such—would be done by the family construction business, Lang Brothers, Inc. We refer to Mr. Lang, Lang Brothers, and Crystal Ridge Development singularly as "the Lang Defendants."

The Lang Defendants retained Horner Brothers Engineers to design the infrastructure for the housing subdivision. Because the land had steep slopes, Horner Brothers also designed the contour of the landscape. The parties planned to create 143 single-family house lots.

On June 30, 2005, the Lang Defendants entered into a "Lot Purchase Agreement" with Dan Ryan Builders, Inc. ("Dan Ryan").[1] The Agreement allowed Dan Ryan to buy individual lots, as many as 143, in the Crystal Ridge subdivision. The Lot Purchase Agreement specified that the Lang Defendants would grade and contour the lots for construction and would build the infrastructure, while Dan Ryan would construct and sell the houses it built on the lots. Grading and construction on Phase I of the subdivision, comprising Lots 1-50, began in fall of 2005.

The main road built through Crystal Ridge was Emerald Drive. To one side of Emerald Drive was a steep upward slope; to the other was a steep downward slope. To create usable lots on the downward slope (including Lots 1 through 7), on April 4, 2006, Dan Ryan and the Lang Defendants entered into a second agreement, titled "Contract With Independent Contractor." Under the agreement, for a fee, the Lang Defendants removed dirt and rock from one part of Crystal Ridge, and then contoured and constructed that material into a massive "fill slope" downhill from Emerald Drive. The Lang Defendants say they moved materials according to engineering plans drawn by Horner Brothers.[2]

Dan Ryan and the Lang Defendants entered into a third contract, the "Trade Contract," on June 2, 2006, whereby the Lang Defendants agreed to perform excavation, dampproofing, and backfilling for the foundations of houses to be constructed.

In August 2006, Dan Ryan purchased its first 12 contiguous finished lots in Crystal Ridge pursuant to the Lot Purchase Agree-

---

1. The first paragraph of the Lot Purchase Agreement identifies the "seller" of the lots as "Crystal Ridge, Inc." The signature line at the end of the Agreement identifies the seller as "Lang Brothers, Inc.," and its president, Robert S. Lang, signed the contract.

2. Under this contract, the Lang Defendants were to "provide the cut and fill necessary to deliver finished buildable lots as described in the mass grading cross sections provided by Horner Brothers Engineers" for Lots 1 through 9 and Lots 19 through 26.

ment. Almost immediately, Dan Ryan began selling the 12 lots and then constructing single-family homes thereon for the purchasers. Dan Ryan purchased another five contiguous lots in January 2007. In May 2007, Dan Ryan and the Lang Defendants signed a fourth contract, the "First Amendment to Lot Purchase Agreement" that, among other things, changed the lot price in return for Dan Ryan's purchase of the final batch of 33 lots.

By March 2007, it appears that the fill slope behind Lots 1 through 7 began to move. In December 2007, the fill slope behind Lot 7 moved significantly, dropping three feet, opening large fissures in the ground, and compromising the integrity of the single-family house built on Lot 7. Dan Ryan repurchased the lot from the homeowner and demolished the house. Thereafter, Dan Ryan began to reconstruct the entire fill slope.

## A. The State Court Case

On February 2, 2009, numerous Crystal Ridge homeowners filed a lawsuit against Dan Ryan in the Circuit Court of Harrison County.[3] The named homeowners had all purchased a lot with a single-family house financed and constructed by Dan Ryan. The state court complaint also sought class-action status for all lot and house purchasers in Crystal Ridge. The plaintiff-homeowners alleged that in constructing the Crystal Ridge development, Dan Ryan had

> excavated, graded and removed and/or moved soil, rock, timber, vegetation and other materials, ... installed underground utility and water lines, and constructed roads and drainage culverts, all of which should have required careful planning, research, study, supervision and the investment of adequate capital and resources.

The homeowners further alleged in their complaint that Dan Ryan had "caused or substantially contributed to a portion of the Crystal Ridge Development to subside, fall

away or slip damaging the Plaintiffs' lots and land and the Development as a whole and forcing the demolition of at least one newly built home in the Development to date." The homeowners' complaint contends that Dan Ryan "failed to maintain sufficient support for the soil" and "improperly altered the flow of water" in Crystal Ridge, causing subsidence or the "loss of lateral and subjacent support" necessary to support houses on the tract.

Based on these allegations, the homeowners asserted various legal theories for relief including negligence, breach of warranty, fraudulent misrepresentation, and vicarious liability. The homeowners contended that Dan Ryan failed to "exercise reasonable care in planning, construction, excavation, [and] site development" of Crystal Ridge, and that Dan Ryan failed to "supervise" or "make a proper and reasonable inspection" of work done by others.

In their initial complaint, and likewise in three subsequent amendments to that complaint, the plaintiff-homeowners never asserted any claims against the Lang Defendants or Horner Brothers.

Furthermore, at this point in the state court case, Dan Ryan also did not assert any claims against the Lang Defendants or Horner Brothers, specifically by way of a third-party complaint alleging they were liable for part or all of the homeowner's claims. Instead, Dan Ryan filed a civil case in federal court against the Lang Defendants.

## B. The Federal Court Case

Ten months after the homeowners filed the state court case, on December 8, 2009, Dan Ryan filed a new lawsuit against the three Lang Defendants in the United States District Court for the Northern District of West Virginia.[4] The complaint was based on the federal court's diversity jurisdiction.[5] The federal court complaint also centered upon

---

**3.** The plaintiffs' complaint lists as defendants Dan Ryan Builders, Inc.; Dan Ryan Builders Realty, Inc.; DRB Enterprises, Inc.; Monocacy Home Mortgage, LLC; Christopher Rusch; Crystal Rankin; and John Doe. *See Frank M. Williams, et al. v. Dan Ryan Builders, Inc., et al.,* Civil Action No. 09-C-57, 2016 WL 7985466 (Harrison Co.).

**4.** *Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc., et al.,* No. 1:09CV161 (N.D.W.Va.).

**5.** *See* 28 U.S.C. § 1332.

the Crystal Ridge subdivision and generally alleged that the Lang Defendants were responsible for the same actions at issue in the state court case, including:

> the development of various designs and plans for construction of Subdivision infrastructure ... including, but not limited to: clearing and establishing grades on lots ... mass site grading; on-lot fill compaction; ... design and construction of storm water and sewer management systems; roadway curb and gutter installation; roadway paving installation; certain landscaping installation; certain street element installation; and certain utility installation.

Count I of Dan Ryan's complaint asserted a cause of action for negligence. It asserted that the Lang Defendants failed to act with reasonable care in the "placement of fill and compaction of fill material under Subdivision lots," the "installation of roadways and gutters," the "installation of storm water and sewer systems," and the "installation of utilities." The complaint alleged the Lang Defendants were negligent because they "deviat[ed] from original, approved construction designs and plans when performing excavation work[.]" As evidence of the Lang Defendants' duties—duties that were breached in negligence—Dan Ryan cited to the obligations established in the Lot Purchase Agreement; the Trade Contract; and the First Amendment to the Lot Purchase Agreement.[6]

Count II of Dan Ryan's complaint alleged breach of contract (including for "negligently performing the construction activities"). Dan Ryan asserted the Lang Defendants breached the same contracts, and the same obligations, set forth in the negligence count, Count I.[7]

Finally, the initial complaint that Dan Ryan filed in federal court included a count seeking "Defense and Indemnification." Dan Ryan asserted in Count IV that homeowners had named it as a defendant in the aforementioned civil action in state court. Dan Ryan contended that the plaintiff-homeowners in the state court action were alleging damages "that arise from and are a direct and proximate result of [the Lang] Defendants' negligence as alleged in Count I" of Dan Ryan's complaint. Dan Ryan's initial complaint demanded the Lang Defendants provide both a defense and "indemnification and/or contribution for any damages awarded for plaintiffs" in the state court action.

The Lang Defendants moved to dismiss Dan Ryan's federal court lawsuit. The Lang Defendants argued, pursuant to the *Colorado River* abstention doctrine, that the complaint should be dismissed because a pre-existing parallel suit was pending in state court.[8] Under *Colorado River*, "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." [9] Dan Ryan responded that *Colorado River* did not apply by arguing that the Lang Defendants were not named parties in the state court action. However, despite Dan Ryan's response, the federal judge expressed an inclination to dismiss part or all of Dan Ryan's federal complaint because of the indemnification-contribution-defense count. The federal judge stated:

> [A]t the end of the day, Count 4 is where I'm focused because I think your whole effort to litigate this thing in federal court collapses

---

**6.** Dan Ryan's federal court complaint omits mention of the "Contract With Independent Contractor," where the Lang Defendants agreed to dig, dampproof, and backfill foundations of houses constructed by Dan Ryan.

**7.** In Count III of the complaint, Dan Ryan asserted a cause of action for fraudulent misrepresentation. However, it abandoned this legal theory at trial.

**8.** *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *See also, McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934-35 (4th Cir. 1992) (Under *Colorado River*, "The court

*should consider 1) the preference accorded to the first court assuming jurisdiction over a res; 2) the relative inconvenience of the state and federal forums; 3) the need to avoid piecemeal litigation; and 4) the relative order of the state and federal suits. Later, the Court added additional factors such as whether a federal question is presented in the case and whether either the state or the federal suit 'was a contrived, defensive reaction' to the other."* (Citations omitted)).

**9.** *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).

on Count 4. You brought it in here specifically seeking defense and indemnification for the state case from Lang Brothers and that—that is not something I'm going to rule on.

Now if you want to go back and amend your complaint and get that out and seek defense and indemnification over in state court by way of third party, I don't know, but if this is in here, here's what you're going to get from me. Either I'm going to grant the motion to dismiss as to that particular count, if I can do it and I don't know if I can or if I have to dismiss the whole thing, I'm going to stay the whole thing until the state court action's over because of the defense and indemnification issue.

After the hearing, Dan Ryan amended its federal court complaint and removed Count IV. Following the amendment, the federal court refused to dismiss the case and proceeded to exercise jurisdiction.

Thereafter, the Lang Defendants filed a third-party complaint in federal court against Horner Brothers. The Lang Defendants asserted, because Dan Ryan's complaint implicated the engineering work of Horner Brothers in the development and construction of Crystal Ridge, that Horner Brothers should be liable under theories of implied indemnity, contribution, and breach of contract.

### C. Dan Ryan's Third-Party Claim in State Court

■ In March of 2012—nearly two years after voluntarily dismissing its federal court claims for contribution and indemnification, and nearly three years after the homeowners filed their lawsuit against Dan Ryan—Dan Ryan filed a third-party complaint in the homeowners' state court case. This third-party complaint—the pleading at the heart of this appeal—was against the Lang Defendants and Horner Brothers.[10] Dan Ryan alleged that the Lang Defendants and Horner Brothers were responsible for the design, engineering, and construction of the fill slope that the homeowners alleged to be defective. The third-party complaint specifies that the Lang Defendants' duties in the subdivision were set forth in three contracts: the Lot Purchase Agreement; the Contract With Independent Contractor; and the Trade Contract.[11] Dan Ryan's third-party complaint sought common-law contribution for negligence, contractual contribution, and damages for breach of contract.

The Lang Defendants and Horner Brothers answered the third-party complaint. Shortly thereafter, the state court entered an order preventing the parties from conducting discovery against the Lang Defendants or Horner Brothers until the conclusion of federal court proceedings.

### D. The Federal Court Trial

In August 2012, the federal court conducted a bench trial on Dan Ryan's breach of contract and negligence theories, and issued a 90-page decision on September 24, 2013.[12] The federal court found that Dan Ryan alleged various obligations and duties owed by the Lang Defendants, obligations which arose from several contracts. Much of the federal court's discussion centered upon the Lang Defendants' duty to construct the fill slope downhill of Emerald Drive. The federal court's decision extensively details the trial evidence showing that the "fill slope placed

---

**10.** Rule 14(a) of the *West Virginia Rules of Civil Procedure* permits a defendant to file a third-party complaint against anyone who may be liable "for all or part of the plaintiff's claim" against the defendant.

A third-party complaint filed pursuant to Rule 14(a) of the West Virginia Rules of Civil Procedure is proper only when the party to be joined is or may be liable to the third-party plaintiff for all or part of the original plaintiff's claim(s) against the third-party plaintiff. A third-party complaint is not proper merely because it arises from the same transaction or occurrence that is the subject matter of the original plaintiff's complaint against the defendant.

Syllabus Point 1, *Braxton Lumber Co. v. Lloyd's Inc.*, 238 W.Va. 177, 793 S.E.2d 341 (2016).

**11.** Unlike its federal court complaint, Dan Ryan's state court third-party complaint omits reference to the First Amendment to the Lot Purchase Agreement but includes the Contract With Independent Contractor. Two of the contracts referenced in the state third-party complaint were clearly addressed in both the federal complaint and federal trial (the Lot Purchase Agreement and the Trade Contract).

**12.** *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, No. 1:09CV161, 2013 WL 5352844 (N.D.W.Va. Sept. 24, 2013).

by [the Lang Defendants] on top of the pre-existing slope had been poorly constructed, creating an unstable fill embankment." [13] Expert evidence presented at trial by Dan Ryan noted the "poor construction practices" by the Lang Defendants, including "over-steepened slope faces, ... inadequate drainage, lack of proper benching, and uncontrolled fill placement and compaction[.]" [14]

At trial, to the extent Dan Ryan based its case on the various contracts between the parties, the federal court found Dan Ryan had narrowed its case down to four specific breaches of contracts by the Lang Defendants. The federal court, however, concluded Dan Ryan had failed to prove all but one of those breaches. For instance, the federal court found, "While there is a significant dispute in this case about whether [the Lang Defendants] properly constructed the fill slope, there is no dispute that [the Lang Defendants] completed the grading work and was paid in full by [Dan Ryan Builders]." [15] In other words, Dan Ryan failed to show the breach of any contract because the evidence established the Lang Defendants had in fact, constructed the fill slope and Dan Ryan had not introduced any compelling evidence to show it was done improperly.

The federal court found the Lang Defendants breached only one of its duties under one contract: an agreement to patch roadways and repair curbs. The federal court's order awarded Dan Ryan $175,646.24 in damages (plus another $77,615.24 in pre-judgment interest) against the Lang Defendants.

As for Dan Ryan's theory that the Lang Defendants were negligent, the federal court found that claim entangled with the contract claims and barred by the "gist of the action" doctrine. At trial, Dan Ryan alleged that the Lang Defendants' "negligence caused (1) the failure of the fill embankment along Lots 2 through 7, (2) the failure of the cut slope behind Lots 15 through 17, (3) compaction issues on other lots; and (4) issues with 'bad soil' on Lot 10." [16]

However, a negligence action requires a plaintiff to show a defendant breached a duty of care. The gist-of-the-action doctrine is triggered when the asserted duty of care derives, in fact, from a contract:

> If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is, in substance, an action on the contract, whatever may be the form of the pleading.[17]

Under this doctrine, "recovery in tort will be barred" when any of the following factors are demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.[18]

The federal court found that Dan Ryan's "characterization of the legal duty owed in this case has been a moving target." [19] However, by the conclusion of the trial, the federal court determined that the primary duty of care asserted by Dan Ryan was the Lang Defendants' implied warranty they would exercise reasonable skill in completing their contractual duties. In other words, the warranty duties asserted by Dan Ryan arose

---

13. *Id.*, 2013 WL 5352844, at *8.

14. *Id.*

15. *Id.*, at *5.

16. *Id.*, at *22.

17. *Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 92, 246 S.E.2d 624, 628 (1978) (quoting 1 Am.Jur.2d Actions § 8 (1962)).

18. *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 586, 746 S.E.2d 568, 577 (2013) (*per curiam*) (quoting *Star v. Rosenthal*, 884 F.Supp.2d 319, 328-29 (E.D.Pa. 2012)). *See also* Syllabus Point 9, in part, *Lockhart v. Airco Heating & Cooling, Inc.*, 211 W.Va. 609, 567 S.E.2d 619 (2002) ("An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract.").

19. *Dan Ryan Builders*, 2013 WL 5352844, at *28.

from the contracts between Dan Ryan and the Lang Defendants, and were not independent tort duties. Hence, because the duties alleged to have been breached were fully grounded in contract, allowing Dan Ryan "recovery in tort in this instance would disrupt the well founded expectations the parties held upon entering their contract." [20] The circuit court therefore concluded Dan Ryan failed, as a matter of law, to establish its negligence claims.

Having ruled on Dan Ryan's claims against the Lang Defendants, the federal court then dismissed the Lang Defendants' third-party claim for contribution against Horner Brothers. The federal court found the claim moot because Dan Ryan "has failed to prove any damages sounding in negligence."

Dan Ryan appealed, but the federal district court's decision was affirmed. In a published opinion, the federal court of appeals recognized the ambiguous, wide-ranging nature of Dan Ryan's federal case:

This is a messy case, spanning four years and thousands of pages of trial submissions. During the course of such protracted litigation, parties must be vigilant not to lose sight of the necessity of pleading and proving all of the elements of each cause of action.

The district court properly dismissed Dan Ryan's tort claim, alleging negligence in construction of the fill slope, because Dan Ryan rested that claim solely on asserted breach of two contracts—the [Lot Purchase Agreement] and the [First] Amendment [to the Lot Purchase Agreement]. We now hold that Dan Ryan never alleged, and the parties never consented to trial on, a claim of breach of the fill slope contracts. Contrary to Dan Ryan's

contention, this result does not unfairly penalize it for a purely formal error. Rather, it simply holds Dan Ryan to the requirements of the law. A claim grounded on breach of contract (here, the LPA and the Amendment) does not give rise to tort liability, and a claim never pled (here, breach of the fill slope contracts) will not be regarded as pled unless actually tried by consent. These are the only fair standards, for without them litigants and courts alike would be unable to ever adequately prepare for trial. Parties would be forced to defend against shadow claims, and trial courts would be forced to search, as for a needle in a haystack, for unpled causes of action purportedly hiding in the parties' submissions.

The federal appeals court found that "this is precisely the kind of case in which [Dan Ryan's] claims are 'simply breach of contract claims masquerading as' tort claims." [21] As the federal appeals court succinctly stated, "Dan Ryan's 'negligence' claim was actually a claim for breach of contract. Thus, Dan Ryan's negligence claim fails as a matter of law." [22]

### E. Summary Judgment in State Court

■ Following the conclusion of proceedings in federal court, in October 2015, the Lang Defendants and Horner Brothers filed motions for summary judgment in state court to dismiss Dan Ryan's third-party complaint on the ground of *res judicata*.[23] These third-party defendants argued that Dan Ryan's third-party complaint referenced the same contracts, and the same allegedly negligent actions, that were the focus of the federal court trial.

---

20. *Dan Ryan Builders*, 2013 WL 5352844, at *29.

21. *Id.*, 783 F.3d at 982 (*quoting Gaddy*, 746 S.E.2d at 577).

22. *Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.*, 783 F.3d 976, 982 (4th Cir.2015).

23. Dan Ryan asserts we should disregard Horner Brothers' arguments on *res judicata* because the affirmative defense was not included in its answer to the third-party complaint. *Res judicata* / claim preclusion is an affirmative defense that should be raised under Rule 8(c) of the *Rules of Civil Procedure*. Nevertheless, a party may raise *res judicata* by summary judgment motion when

the defense was unavailable at the time of the original answer. *See Kendall v. Avon Prod., Inc.*, 711 F.Supp. 1178, 1179 n.2 (S.D.N.Y..1989) (*Res judicata* and collateral estoppel "may be properly raised for the first time in a motion for summary judgment in a situation where these defenses were unavailable at the time of the original answer. Indeed, these defenses may be raised at the pre-trial stage in the interest of efficient and expeditious judicial administration and in circumstances where, as here, the plaintiff is provided with an adequate opportunity to present arguments rebutting the defense." (Citations and quotes omitted)).

In orders dated March 17 and March 24, 2016, the circuit court granted, respectively, the Lang Defendants' and Horner Brothers' motions. In both orders, the circuit court found that Dan Ryan's third-party complaint involved the same parties and the same cause of action, based upon the same operative facts and transactions, as was asserted in federal court, and that the federal court action resulted in a final judgment on the merits. The circuit court found that Dan Ryan's third-party complaint was barred by the doctrine of *res judicata*.

Dan Ryan now appeals the circuit court's summary judgment orders.

## II.

## STANDARD OF REVIEW

■ We review a circuit court's orders granting summary judgment *de novo*.[24]

## III.

## ANALYSIS

Dan Ryan argues that the circuit court had a misconception about, or incorrectly applied, the doctrine of *res judicata* and claim preclusion. Dan Ryan asserts that the damages sought by the homeowners in state court were not litigated in the federal case between Dan Ryan, the Lang Defendants and Horner Brothers. Because claims for contribution could only be litigated in the state court proceeding brought by the injured homeowners, Dan Ryan contends that it was impossible for those claims to have been adjudicated by the federal court. Furthermore, Dan Ryan argues that the claims it asserted in federal court are not the same causes of action as those asserted in its state court contribution claims. Overall, Dan Ryan argues that applying *res judicata* or claim preclusion to foreclose its contribution claims is fundamentally unfair and defeats the ends of justice.

The Lang Defendants and Horner Brothers counter that it would be fundamentally unfair to require them to spend thousands of dollars defending against Dan Ryan's third-party claims in state court, when they have already spent thousands of dollars defending against the same claims, based upon the same evidence and same witnesses and same contracts, as were litigated in federal court. They argue that Dan Ryan initially brought its contribution claim in federal court, but then dismissed that claim when the federal court threatened either to delay or to dismiss the entire federal case in favor of letting the previously filed state court case proceed to a conclusion. The Lang Defendants and Horner Brothers assert that Dan Ryan could have litigated all of its claims in state court, but it strategically chose to go elsewhere— and lost. They contend they should not be penalized in successive litigation for Dan Ryan's legal missteps.

■ Unquestionably, a federal court's judgment is binding upon a West Virginia state court.[25] Nevertheless, before turning to Dan Ryan's arguments, the first issue we must address is this: which law determines the preclusive effect of a federal court judgment upon a state court proceeding? Federal law or state law? This distinction is of practical consequence because West Virginia's rules of *res judicata* and claim preclusion differ somewhat from the rules used by federal courts.[26]

---

**24.** Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

**25.** *See, e.g.*, Susan Bandes, Thomas D. Rowe, Jr., 18 Moore's Federal Practice § 133.10 (3rd Ed. 2017) ("The rule that state courts must give binding effect to federal court proceedings is uncontroversial."); Ronan E. Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741, 744 (1976) (There is a "clearly established rule that state courts must give full faith and credit to the proceedings of federal courts[.] That this is the rule is beyond doubt, and the state courts have generally accepted it.").

**26.** When considering *res judicata* or claim preclusion, West Virginia applies a narrow "same evidence" test which examines whether "the same evidence would support both actions or issues." Syllabus Point 4, *Slider v. State Farm Mut. Auto. Ins. Co.*, 210 W.Va. 476, 557 S.E.2d 883 (2001). Federal courts apply a broader "same transaction" test which examines whether "the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999).

■ "The preclusive effect of a federal-court judgment is determined by federal common law."[27] However, the federal common law contains different rules of claim preclusion that change depending on the form of jurisdiction exercised by the federal court that rendered the underlying judgment.

■ On the one hand, if the rendering federal court resolved a federal question (exercising jurisdiction under 28 U.S.C. § 1331), then federal law requires a subsequent court to apply substantive federal rules of claim preclusion to determine the preclusive effect of the prior federal court judgment.[28] On the other, if the rendering federal court sat in diversity and ruled upon questions of state law (exercising jurisdiction under 28 U.S.C. § 1332), then federal law requires a subsequent court to assess the preclusive effect of the federal court judgment using "the law that would be applied by state courts in the State in which the federal diversity court sits."[29] In other words, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."[30]

■ We therefore hold that in a state court proceeding, federal rules of *res judicata* or claim preclusion dictate the preclusive effect of a federal court judgment on a federal question. However, for a federal court judgment applying state law, that state's rules of *res judicata* or claim preclusion dictate the preclusive effect of the judgment.[31]

■ In this case, the federal court exercised diversity jurisdiction over Dan Ryan's complaint, and applied West Virginia's laws. Hence, we weigh the preclusive effect of the federal court's judgment in the circuit court using West Virginia's rules of *res judicata* and claim preclusion.

■ Under West Virginia law, the doctrine of *res judicata* or claim preclusion assures that judgments are conclusive, thus avoiding relitigation of issues that were or could have been raised in the original action.[32] *Res judicata* "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."[33] "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."[34]

**27.** *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

**28.** *Heck v. Humphrey*, 512 U.S. 477, 488 n.9, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("State courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law.").

**29.** *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001).

**30.** *Taylor*, 553 U.S. at 891 n.4, 128 S.Ct. 2161. One caveat, however, is that "[t]his federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interests." *Semtek*, 531 U.S. at 509, 121 S.Ct. 1021.

**31.** In *State ex rel. Small v. Clawges*, 231 W.Va. 301, 311, 745 S.E.2d 192, 202 (2013) (*per curiam*), this Court broadly stated in *dicta*, " '[t]he preclusive effect of a prior federal court judgment is controlled by federal res judicata rules.' *Jefferson Marine Towing, Inc. v. Kostmayer Constr., LLC.*, 32 So.3d 255, 259 (La.Ct.App. 2010)." This rule is correct only to the extent it applies to federal court rulings upon federal questions; it is wrong when applied to rulings issued in diversity. Accordingly, to the extent *Small* conflicts with our holding today, it is modified.

**32.** *State v. Miller*, 194 W.Va. 3, 9, 459 S.E.2d 114, 120 (1995). *See also White v. SWCC*, 164 W.Va. 284, 289, 262 S.E.2d 752, 756 (1980) ("The doctrine of *res judicata* is based on a recognized public policy to quiet litigation and on a desire that individuals should not be forced to litigate an issue more than once.").

**33.** *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *See also Conley v. Spillers*, 171 W.Va. 584, 588, 301 S.E.2d 216, 220 (1983) (*quoting Montana v. United States*, 440 U.S. 147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.")).

**34.** *Gonzales v. California Dep't of Corr.*, 739 F.3d 1226, 1232 (9th Cir. 2014) (quoting *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 123 Cal. Rptr.2d 432, 51 P.3d 297, 302 (2002)).

560

"Res judicata or claim preclusion bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." [35] We have established a three-part test to determine the claim preclusive effect of a prior judgment:

Before the prosecution of a lawsuit may be barred on the basis of res judicata, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.[36]

As for the first and second elements, there is no reasonable question but that the final judgment issued by the federal district court was a "final adjudication on the merits" involving the "same parties or persons in privity." Dan Ryan's claims in both federal and state court involve the Lang Defendants and Horner Brothers, and the federal district court entered a judgment that was subsequently affirmed by a federal court of appeals.

The parties' real dispute centers on the third element: whether the state court third-party complaint is based on the same cause of action that Dan Ryan pursued in federal court. We have adopted the following guide to measuring the sameness of actions pursued in different courts:

For purposes of res judicata or claim preclusion, "a cause of action" is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. The test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues. If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata.[37]

Applying our analysis to Dan Ryan's state court third-party claims against the Lang Defendants and Horner Brothers, it is clear that the same evidence would support both the state and the federal actions. Both the state court and federal court actions relate to the work performed by the Lang Defendants and Horner Brothers in the Crystal Ridge subdivision. Both actions allege the Lang Defendants and Horner Brothers failed to properly design and/or construct the infrastructure and the fill slope between 2005 and 2007, as required by various contracts with Dan Ryan. Thus, both the federal action and the state action rely upon the same facts, and are virtually identical in terms of time, space, and origin.

Furthermore, the record reflects that Dan Ryan could and did include a claim for contribution or indemnification in its original federal court complaint. Dan Ryan voluntarily amended its complaint and dismissed that claim to prevent the federal court's exercise of the Colorado River abstention doctrine. However, "The voluntary dismissal of the complaint does not preserve or withhold

**35.** *State ex rel. Small v. Clawges,* 231 W.Va. at 311, 745 S.E.2d at 202 (*quoting Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 210 (4th Cir. 2009)).

**36.** Syllabus Point 4, *Blake v. Charleston Area Med. Ctr., Inc.,* 201 W.Va. 469, 498 S.E.2d 41 (1997).

**37.** Syllabus Point 4, *Slider v. State Farm Mut. Auto. Ins. Co.,* 210 W.Va. at 478, 557 S.E.2d at 885. *Accord, Blake,* 201 W.Va. at 476, 498 S.E.2d at 48 (*quoting White v. SWCC,* 164 W.Va. at 290, 262 S.E.2d at 756 (ellipses omitted)) ("[f]or purposes of res judicata, 'a cause of action' is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. The test to determine if the cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues. If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata.").

it from the doctrine of res judicata; indeed, one of the underlying rationales for the doctrine is to prevent this type of *ad infinitum* claim splitting and piecemeal litigation." [38] "Like res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action.' " [39] As the Fourth Circuit explained:

> Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that "[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law." [40]

"Especially in cases where a party voluntarily drops a claim in a first action, and then later seeks to maintain a separate second action on the abandoned claim, the rule against splitting causes of action applies to preclude that party from maintaining the separate second suit on the abandoned claim." [41]

■ West Virginia's law of *res judicata* prohibits not only the re-litigation of claims that were actually asserted in the prior action, but also precludes "every other matter which the parties might have litigated as incident thereto[.]" [42] We recognize that, because of this facet of *res judicata*, a party with both state and federal questions may face a conundrum when choosing a courtroom forum.

One choice is to bring all claims in state court, foregoing the federal forum for federal constitutional or statutory claims. Another, for litigants who find access to federal court for their federal claims a paramount objective, is to simply forgo litigating their state claims. A third choice is to split the federal and state claims, and wait to see which court decides first. [43]

"That a litigant's choice of forum is reduced 'has long been understood to be a part of the tension inherent in our system of federalism.' " [44] To be clear, however, that conundrum did not exist in the instant case because all of Dan Ryan's negligence and contract claims involved state law questions and no federal questions.

Dan Ryan voluntarily abandoned its federal court claim for contribution and indemnification, intentionally choosing to split that claim from its other direct claims of negligence and breach of contract. It now seeks to maintain a new, state court action based upon that abandoned federal court claim. Dan Ryan states that a defendant's claims for inchoate contribution in a state case must be asserted through a third-party complaint in the underlying action, and that such claims cannot be filed in a separate federal action. [45] Dan Ryan contends that its claim for contribution "could [not] have been resolved, had it been presented, in the prior action." [46] It

---

**38.** *Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F.Supp.2d 637, 648 (W.D. Va. 2013).

**39.** *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F.Supp.2d 621, 626 (D. Md. 2006) (quoting *Myers v. Colgate–Palmolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan.2000)).

**40.** *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)).

**41.** *Dade Cty. v. Matheson*, 605 So.2d 469, 472 (Fla.Ct.App. 1992).

**42.** *Blake*, 201 W.Va. at 477, 498 S.E.2d at 49 (quoting Syllabus Point 1, *Sayre's Adm'r v. Harpold*, 33 W.Va. 553, 11 S.E. 16 (1890)).

**43.** 18 Moore's Federal Practice § 133.13.

**44.** *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Employees v. Missouri Public Health & Welfare Dept.*, 411 U.S. 279, 298, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973)) (Marshall, J., concurring in result).

**45.** *See* Syllabus Points 4 and 5, in part, *Howell v. Luckey*, 205 W.Va. 445, 518 S.E.2d 873 (1999) ("The right of contribution ... is not mandatory but must be asserted by the defendant by filing a third-party claim." Furthermore, "A defendant may not pursue a separate cause of action against a joint tortfeasor for contribution after judgment has been rendered in the underlying case, when that joint tortfeasor was not a party in the underlying case and the defendant did not file a third-party claim pursuant to Rule 14(a) of the West Virginia Rules of Civil Procedure.").

**46.** Syllabus Point 4, *Blake*, 201 W.Va. at 472, 498 S.E.2d at 44.

argues that it must, as a matter of law, be permitted to file two separate, piecemeal actions in federal and state court using the same evidence.

Dan Ryan's argument, however, ignores that the focus of our contribution holdings is to eliminate piecemeal adjudications and to encourage unified proceedings. We have said that a defendant's claim for contribution against a third party must be joined in the same suit as the underlying plaintiff's claims, because "such a procedure ... furthers one of the primary goals of any system of justice—to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts." [47]

■ The "application of *res judicata* is dependent upon the distinctive characteristics of a particular case." [48] The record clearly establishes that Dan Ryan's state court claims are "based on the same cause of action" that was pursued to a final judgment in federal court. Dan Ryan plainly could and should have pursued all of its factually intertwined claims against the Lang Defendants and Horner Brothers in the state court case. Rule 14(a) of the *Rules of Civil Procedure* allows a defending party in a suit (like Dan Ryan) to bring a third-party complaint against another who may be liable "for all or part of the plaintiff's claim" against the defending party. Once that defending party asserts a valid third-party complaint that meets the requirements of Rule 14(a),[49] Rule 18(a) allows that party to also join in the third-party action "as many claims, legal or equitable, as the party has against" the third-party defendant.[50] Dan Ryan deliberately chose not to avail itself of this process.

In light of the federal court's statements in a hearing that it would not receive a favorable ruling on its contribution and indemnity claim, Dan Ryan dismissed the claim. Dan Ryan made the strategic decision to pursue its claims in a piecemeal fashion, asserting different theories and measures of relief in different courts. Regardless of the merits of its state court claims, permitting Dan Ryan to proceed would impose the unfair and unjust costs and vexation of a second, unnecessary lawsuit upon the Lang Defendants and Horner Brothers. This is precisely what the doctrine of *res judicata* was designed to preclude.

Succinctly stated, we find Dan Ryan's state court claims for contribution and indemnification barred by *res judicata*.

## IV.

## CONCLUSION

Dan Ryan's third-party complaint against the Lang Defendants and Horner Brothers is barred by *res judicata*. The circuit court's orders dismissing the third-party complaint are therefore affirmed.

Affirmed.

CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a separate opinion.

LOUGHRY, Chief Justice, dissenting:

The majority has fallen victim to its own ill-conceived precedent regarding claims for contribution and, in its attempt to skirt this precedent, has put the petitioner to the impossible task of predicting that this Court would later hold its attempt to adhere to the letter of the law against it. Hiding behind a swarm of federal and state res judicata caselaw, the majority fails to address the petitioner's primary argument in this matter: that it was prohibited *by our caselaw* from bringing its contribution claim in the federal court action. As the petitioner correctly

---

**47.** *Charleston Area Medical Ctr., Inc. v. Parke-Davis*, 217 W.Va. 15, 21, 614 S.E.2d 15, 22 (2005).

**48.** *Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 276, 672 S.E.2d 598, 605 (2008) (*per curiam*).

**49.** *See, e.g., Braxton Lumber Co. v. Lloyd's Inc.*, 238 W.Va. at 182, 793 S.E.2d at 346 (finding third-party claim was improper because it did

not relate to "all or part" of the plaintiff's underlying claim).

**50.** Rule 18(a) of the *Rules of Civil Procedure* provides, "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as the party has against an opposing party."

brings to the majority's attention, *Charleston Area Medical Center, Inc. v. Parke–Davis*, 217 W.Va. 15, 17, 614 S.E.2d 15, 17 (2005), prohibits pursuit of a contribution claim in a separate action not initiated by the tortfeasor. Syllabus point six of *Parke–Davis* states in pertinent part: "The inchoate right of contribution recognized by this state *can only be asserted by means of third-party impleader in an action brought by the injured party against a tortfeasor*." (emphasis added). Nonetheless, the majority now holds that the petitioner is barred from pursuing its claim for contribution in the very manner which *Parke–Davis* mandates.

Despite the majority's attempt to obfuscate the inequity of its result in its elaborate factual recitation, the facts in this case are quite simple. The Crystal Ridge homeowners filed suit against the petitioner in the Circuit Court of Harrison County, alleging that the petitioner negligently constructed the development. The actual construction work regarding the fill slope which failed and gave rise to the homeowners' suit was performed by the Lang Defendants and Horner Brothers. Thereafter, the petitioner filed suit in federal court seeking relief against the Lang Defendants, *for damages the petitioner itself incurred* in trying to rectify the failing fill slope before further damage to the homeowners resulted; the Lang Defendants brought a third-party claim against the Horner Brothers. The petitioner explained that it did not wish for its claim for its own damages to effectively become "lost in the shuffle" of the homeowners' lawsuit. In the federal court action, the petitioner's complaint erroneously sought contribution and indemnification relative to the pending state court suit.[1] However, upon the Lang Defendants' motion to dismiss, the federal court specifically highlighted the inappropriateness of such a claim in the federal action, suggesting that it be brought in state court. Recognizing its error, the petitioner voluntarily withdrew that claim and filed a third-party action against the

Lang Defendants and Horner Brothers in the state court action for contribution and indemnity. The federal court action proceeded to trial and the petitioner was awarded damages for the Lang Defendants' negligence in constructing the fill slope.

The majority takes issue with these procedural maneuvers and holds that because the petitioner voluntarily dismissed its claim for contribution and indemnity in the federal court action, these claims are precluded from being litigated in the state court action through the doctrine of res judicata. Citing *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997), the majority concludes that res judicata prohibits not only the re-litigation of claims asserted in a prior action, but "every other matter which the parties *might have litigated* as incident thereto[.]" *Id.* at 477, 498 S.E.2d at 49. (emphasis added). It is at this point that the majority's analysis crumbles entirely. In the face of the petitioner's claim that *Parke–Davis* in fact *forbids* the bringing of a claim for contribution in a separate action and therefore does not qualify as a "matter which the parties might have litigated" in the separate federal action, the majority retreats to vague incantations about avoiding "piecemeal litigation" rather than offering any substantive law or addressing the directly on-point holding of *Parke–Davis*.

The reason for this is obvious: the holding in *Parke–Davis* is poorly reasoned, overbroad, and, most importantly, does not fit the majority's desired resolution of this matter. I, too, have repeatedly lamented the "common sense-defying logic" and "tortured conclusions" employed in *Parke–Davis*. *Modular Bldg. Consultants of W. Va., Inc. v. Poerio, Inc.*, 235 W.Va. 474, 488–89, 774 S.E.2d 555, 569–70 (2015) (Loughry, J., concurring); *see also State Auto Prop. & Cas. Ins. Co. v. Al–Ko Kober*, No. 14-0556, 2015 WL 3631685, at *4 (W. Va. June 10, 2015) (Loughry, J., con-

---

1. The petitioner's counsel indicated in oral argument that the inclusion of such claim was an error of draftsmanship by prior counsel, which was subsequently rectified through voluntary dismissal of that claim. Why the majority ascribes any nefarious intent to such activity is unclear. Certainly, mistakes can and do occur; nothing in the record would suggest anything untoward. When litigants rectify such errors in accordance with our caselaw, the majority's knee-jerk reaction to ascribe gamesmanship to mere inadvertence does little to encourage litigants to admit error and conform their pleadings to our caselaw.

curring) (criticizing *Parke–Davis*).[2] While I have made clear that I "do not advocate piecemeal litigation for purposes of pursuing contribution or indemnity [and] [w]here an action is filed, all claims should be brought therein via impleader or consolidation[,]" *Parke–Davis'* overly restrictive requirement that contribution claims may *only* be brought in an action filed by the tortfeasor is problematic for the reasons stated in my concurrences and as further demonstrated herein. *State Auto*, 2015 WL 3631685 at *4.

Nonetheless, the holding in *Parke–Davis* remains undisturbed and is the current applicable law regarding the *required* forum in which to bring claims for contribution. This holding plainly mandates that such claims "can only be asserted by means of third-party impleader in an action brought by the injured party against a tortfeasor." *Id.*, syl. pt. 6. I previously bemoaned the potential lack of future opportunity to revisit *Parke–Davis* because "tortfeasors will undoubtedly be reluctant to risk running afoul of the *Parke–Davis* holding," thereby evading our review. *State Auto*, 2015 WL 3631685 at *4. This prediction is fully borne out in this case. Attempting to strictly comply with the *Parke–Davis* holding lest it jeopardize its inchoate right of contribution, the petitioner voluntarily dismissed its contribution claim in the federal court action and brought its contribution claim by way of third-party impleader in the state court action—just as the syllabus point requires. Now, the majority finds that the petitioner's claim is barred because it did precisely that. This Court cannot on the one hand demand that litigants proceed in a particular manner regarding a specific cause of action, then penalize them for doing so.

2. I would be remiss if I failed to note that the majority's author, despite refusing to discuss the implications of *Parke–Davis* in the opinion, joined in my *State Auto* concurrence criticizing the case and agreed that it was "wrongly decided." 2015 WL 3631685 at *4.

3. Furthermore, the majority's professed abhorrence of "piecemeal" litigation is undermined by its refusal to utilize the more appropriate concept which would limit the duplication of litigation in the instant matter: collateral estoppel. As indicated above, the federal court found that the Lang Defendants and Horner Brothers were neg-

The majority's refusal to address the petitioner's primary argument—that it was *legally foreclosed* from proceeding as the majority now finds it should have—is telling, to say the least. Moreover, while the majority takes the petitioner to task for attempting "two bites" at the apple, it fails to appreciate that the petitioner was already victorious in federal court, obviating the need for a "second bite." The majority fails to appreciate that the petitioner does not seek additional damages in the state court action. Rather, it seeks merely to ensure, in the state court action, that it is not held liable for greater than its own proportionate share of fault.[3] It was long-ago established that "[i]n West Virginia one joint tort-feasor is entitled to contribution from another joint tort-feasor[.]" *Haynes v. City of Nitro*, 161 W.Va. 230, 230, 240 S.E.2d 544, 545 (1977). The majority's refusal to permit the petitioner to preserve this indelible right via a claim for contribution for fear that some duplication of proof may occur is nonsensical.

As is apparent, the petitioner sought recovery of its own damages in the federal court action and, as plaintiff, had every right to choose its forum. As this Court has little trouble recognizing when a traditional personal injury plaintiff is involved, "the plaintiff's choice of forum should rarely be disturbed." *Nezan v. Aries Techs., Inc.*, 226 W.Va. 631, 644, 704 S.E.2d 631, 644 (2010) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The same holds true of the petitioner. Simply because the petitioner is named as a defendant in a parallel action instituted by a different party who was likewise injured by the same joint tortfeasors does not require the petitioner to subordinate its choice of forum

ligent in their construction of the fill slope. Accordingly, in my view, the petitioner should have been entitled to assert collateral estoppel or issue preclusion against the Lang Defendants and Horner Brothers in the state court action. "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." *Conley v. Spillers*, 171 W.Va. 584, 586, 301 S.E.2d 216, 217 (1983).

for its own damages. Multiple or overlapping litigation is not invariably avoidable. Differing parties having differing rights and remedies to pursue may occasionally cause multiple pending actions to ensue on parallel tracks. Where joinder is not mandatory by way of our Rules of Civil Procedure or substantive law, it is inappropriate for this Court to second-guess choices made in the course of litigation for no other reason than it would have preferred the matters all be decided in one action.

Moreover, any suggestion by the majority that the petitioner should have pursued its own claim for damages in the state court litigation initiated first by the homeowners, is completely incorrect. West Virginia Rule of Civil Procedure 14(a) provides that the third-party complaint serves to implead those "who [are] or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." It does not authorize the assertion, via third-party complaint, of causes of action independent of the plaintiff's claim, regardless of whether it stems from the same underlying facts. Other states with similar rules have held that

> [a]lthough third-party practice is properly used to reduce litigation where the third-party claim arises out of the same basic facts which determine the plaintiff's claim against the defendant, it can not be used to maintain an entirely separate and independent claim against a third party, *even if it arises out of the same general set of facts as the main claim.*

*Filipponio v. Bailitz*, 73 Ill.App.3d 389, 29 Ill.Dec. 466, 392 N.E.2d 23, 26 (1978) (emphasis added). Federal courts interpreting the identical language contained in their federal counterpart to our Rule 14 agree.[4] As explained in one leading treatise on civil procedure:

> If the claim is separate or independent from the main action, impleader will be denied. The claim against the third-party defendant must be based upon plaintiff's claim against defendant. *The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer*

*to the third-party defendant the liability asserted against defendant by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.*

6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.); *see Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988) ("[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto."); *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) ("[T]he third party's liability here is neither dependent upon the outcome of the main claim nor is the third party potentially secondarily liable as a contributor to the defendant."); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983) (same); *Commodity Futures Trading Commission v. Hunt*, 591 F.2d 1211 (7th Cir. 1979) (same); *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848 (5th Cir. 1978) (same); *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967) ("[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim."); *Cordova v. FedEx Ground Package Systems, Inc.*, 104 F.Supp.3d 1119 (D. Or. 2015) (same); *Polymeric Res. Corp. v. Estate of Dumouchelle*, No. 10-14713, 2014 WL 2815681, at *2 (E.D. Mich. June 23, 2014) (dismissing third-party claim which was independent of plaintiff's claim and did not seek to apportion liability of plaintiff's claim against third-party plaintiff); *Colony Ins. Co. v. Kwasnik, Kanowitz & Associates, P.C.*, 288 F.R.D. 340 (D.N.J. 2012) (same); *iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70 (E.D. N.Y. 2011) (same); *Am. Contractors Indem. Co. v. Bigelow*, No. CV 09-08108-PCT-MHM, 2010 WL 5638732, at *2 (D. Ariz. July 30, 2010) ("[A] third-party claim may be asserted only where a third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim and is secondary or derivative thereto."); *E.I. DuPont de Nemours and Co.*

---

**4.** Federal Rule of Civil Procedure 14(a)(1) similarly provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it.*" (emphasis added).

*v. Kolon Industries, Inc.*, 688 F.Supp.2d 443 (E.D. Va. 2009) (same).

Therefore, as demonstrated above, the petitioner was *required* by our long-standing caselaw to bring the action for contribution in the state court action by way of third-party complaint. Further, the petitioner *could not have* pursued its independent claim for damages in the state court action and was fully permitted to choose its forum. Simply put, there was no legally permissible way for the petitioner to have proceeded in this matter other than precisely how it did. This is quite simply a scenario where some multiplicity of suit was unavoidable. The majority completely misses the forest for the trees in its analysis; by doggedly focusing on the narrow legal issue of res judicata and its elements, it fails entirely to appreciate that the practical realities of the claims in this case, coupled with controlling precedent, required the petitioner to proceed in exactly this manner.

Where the law requires that a matter be pursued in a specific forum in a specific manner, it is quite simply inconceivable to me how a majority of this Court concludes that a litigant that adheres to precisely this procedure somehow relinquishes its right to have its cause of action heard. This injury to the petitioner is compounded by the insult of the majority's abject refusal to so much as dignify the caselaw upon which the litigant adhered and relied to its detriment. Accordingly, I respectfully dissent.